# Johnson County Savings Bank *v.* Koch, Appellant.

*Bills of exchange—Negotiable paper—Fraud—Prima facie case—Burden of proof—Evidence—Transactions between other parties.*

1. In a suit against an acceptor of bills of exchange, where the evidence shows that the acceptor signed his name on the notes knowing that they were some sort of an obligation for payment, and there is no evidence of fraud so as to impeach the title of an innocent holder for value before maturity, the offering of the bills with indorsements makes out a prima facie case, entitling the holder to a recovery.

2. Nothing but clear evidence of knowledge or notice, fraud or mala fides, can impeach the prima facie title of a holder of negotiable paper taken before maturity. It is of the utmost importance to the commerce of the country that it should be sternly adhered to, however hard may be its operation in particular cases.

3. In an action upon negotiable paper where the maker alleges improper methods resorted to by the payee in securing the paper, it is proper to exclude evidence tending to show similar, but independent transactions between the payee and other parties.

Argued Dec. 19, 1908. Appeal, No. 58, Oct. T., 1908, by defendant, from judgment of C. P. No. 1, Phila. Co., March T., 1905, No. 2,332, on verdict for plaintiff in case of Johnson County Savings Bank v. Christopher Koch. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Assumpsit by indorsee against acceptor of bills of exchange. Before KINSEY, J.

At the trial the defendant alleged as a matter of defense

improper methods pursued by the Puritan Manufacturing Company, the drawee in the bills, and in support of such allegations made the following offer:

Mr. White: I offer to prove by this witness that at about the time that the representations were made by the agent of the Puritan Manufacturing Company to the defendant similar misrepresentations were made to this witness; that the jewelry delivered to this witness by the Puritan Manufacturing Company was worthless; that it was not gold-filled jewelry, but the price at which it was placed with him was exorbitant; that they gave to him a specifically defined territory within which no other jewelry was to be placed, and that other jewelry was placed by the Puritan Manufacturing Company within the territory given to him, the witness; that the jewelry was guaranteed to him by the agent Bell to be of the quality which would wear for from five to twenty years; that he sold some of the goods, and found that they did not wear except for a few days. That it was represented to him that the acceptances identical in form with the ones sued on here at the time he signed them were acceptances of the goods or receipts for the goods, and that he signed them believing they were merely receipts for or acceptances for the goods; that the first time he learned that the things he had signed were negotiable instruments was when collection was attempted to be made by the same plaintiff here, the Johnson County Savings Bank of Iowa City, Iowa; that the baby rings which were represented to be solid gold were not; that he represented to him that the Puritan Manufacturing Company were the manufacturers of the goods which were sent to him, and that they were not the manufacturers of the goods; that the goods were selected by the Puritan Manufacturing Company, the numbers of them, kind and quality were all fixed, the price at which they were to come to him was fixed by the Puritan Manufacturing Company and the price at which they were to be sold by him was fixed by the Puritan Manufacturing Company.

Mr. Maloney: I object to the offer.

Plaintiff's objections sustained.

Exception for defendant. [3]

The court charged in part as follows:

[The man who has received that paper before maturity, without any notice of what may be the dispute or contention between the maker of the paper and the payee, that is recipient of such commercial paper, and has paid cash for it as a consideration, or whatsoever it may be, and in case of default of payment of it is obliged to come into court to collect the amount of it from the man who made it, such suitor being, I repeat, an honest, bona fide holder, as the law calls it, for value before maturity and without notice, must prove beyond any question that such holder is defective in one of the elements by which the law requires he shall hold it, to wit: either he had some notice of some defect in the note, the consequence of a fraud at its inception, the consequence of not having received it before maturity in due course of business, or had not paid cash for it, but is simply posing as such bona fide holder for the purpose of avoiding differences between the original parties for such a paper.] [12]

[Now, I am obliged to say to you in the judgment of the court, under the evidence submitted there is no such knowledge of defect brought home to the holder of this note, the plaintiff,—the Johnson County Savings Bank,—that would justify a verdict upon your part against them. That being the view I take I am obliged to relieve you of the responsibility of deciding the case and take it upon myself by directing your verdict to be in favor of the plaintiff for the amount of these two notes with the interest due thereon.] [13]

[You will understand, so that you may comprehend clearly what you are doing, that had there been testimony that would show any collusion upon the part of the Johnson County Savings Bank, the recipient of these notes, whereby they, as I said a moment ago, were to appear before us pretentiously as honest holders for value, then I might have let in the defense between Koch, the defendant, and the Puritan Manufacturing Company, the original parties to the note. This testimony was admitted mostly by the court with the possible anticipation that further on in the case it might be shown that the Johnson County Savings Bank was in some way implicated. They may

have been implicated; it is impossible for us to know that as a fact. The most we can say as a matter of law is that here they have not been so proven to be implicated before us, and that being the fact your verdict must be accordingly. This relieves us, therefore, from going into the question of the determination of the issue between the Puritan Manufacturing Company and the defendant as to whether or not this was a binding contract upon Koch, and if so, whether or not there was any fraud perpetrated upon him which the law would notice.] [14]

[Your verdict in this case must be for the plaintiff upon those two notes.] [15]

Verdict and judgment for plaintiff for $225.04. Defendant appealed.

*Errors assigned* were (3) rulings on evidence, quoting the bill of exceptions; (12–15) above instructions, quoting them.

*W. L. Sheppard* and *W. W. Porter,* of *Porter, Foulkrod & McCullagh,* for appellant.—Similar transactions appear in Puritan Mfg. Co. v. Westermire, 84 Pac. Repr. 797; Elgin Jewelry Co. v. Estes, 50 S. E. Repr. 939; Main & Co. v. Dearing, 84 S. W. Repr. 640.

The facts of this case, in relation to the fraudulent method employed to obtain the appellant's signature to a negotiable instrument, very closely resemble the facts in the case of Brown v. Schock, 77 Pa. 471. See also Erie City Iron Works v. Barber, 102 Pa. 156; Hexter v. Bast, 125 Pa. 52.

Evidence of other similar transactions should have been admitted: Neff v. Landis, 110 Pa. 204; Penna. Co. v. R. R. Co., 153 Pa. 160; Schofield v. Shiffer, 156 Pa. 65; Stauffer v. Young, 39 Pa. 455; French & American Importing Co. v. Drug Co., 86 S. W. Repr. 836; Wilson, Close & Co. v. Pritchett, 99 Md. 583 (58 Atl. Repr. 360).

*Clifton Maloney,* for appellee.—Mere suspicion of a defect of title, or knowledge of circumstances that would excite such suspicion in the mind of a prudent man, or gross negligence of the taker at the time of the transfer, is not sufficient to defeat

the plaintiff's prima facie title as a holder in due course: Valley Savings Bank v. Mercer, 55 Atl. Repr. 435; Phelan v. Moss, 67 Pa. 59; Second Nat. Bank v. Morgan, 165 Pa. 199; Lancaster County National Bank v. Barber, 178 Pa. 91; Moorehead v. Gilmore, 77 Pa. 118; Battles & Webster v. Laudenslager, 84 Pa. 446.

Commission of the act charged cannot be proved by showing a like act to have been committed by the same person: Veit v. Class & Nachod Brewing Company, 216 Pa. 29.

OPINION BY MORRISON, J., February 26, 1909:

This suit was for the collection of two drafts, dated September 15, 1904, drawn as follows: "Iowa City, Iowa, September 15, 1904. Three months after date pay to the order of Puritan Mfg. Company at Iowa City, Iowa, ninety-five 00–100 dollars $95.00, value received and charge to account of Puritan Mfg. Company, per R. To Christopher Koch, Philadelphia, Pa. Germantown Ave., Diamond & 6th Sts. Indorsed: October 24, 1904. Pay Johnson Co. Savings Bank, Iowa City, Iowa, or order, Puritan Mfg. Co." Both drafts were alike in all respects except the second one was drawn at six months instead of three. Both of said bills of exchange were accepted across their face on September 15, 1904, as follows: "Accepted, Christopher Koch, Jr." And the appellant admits the genuineness of his signature to the acceptances. These bills of exchange were given by the appellant for a lot of cheap jewelry sold and delivered to him by the Puritan Manufacturing Company in pursuance of a written contract, dated August 18, 1904, and signed by appellant. He subsequently requested a copy of the contract and on August 26, 1904, a copy of it was sent him. The jewelry was brought to the appellant about the middle of September, a month after he signed the contract and two weeks after he received a copy of it. When the goods were brought for delivery the appellant raised some question in regard to a bond which the company was to give him and he refused to sign the acceptance until he had had the bond examined by a lawyer. Appellant's own testimony shows that he consulted his lawyer and in the evening received the goods and signed the acceptances. He does not prove any

trick, artifice or fraud connected with the signing of the acceptances which would invalidate them in the hands of an innocent purchaser for value, before maturity, and without notice. He testified that he signed what they told him were acceptances or receipts for the goods; that he signed four of these acceptances did not seem to strike him as peculiar, but it would be absurd for the company to take four separate receipts for the delivery of the goods. He says he did not at that time think there was any liability on his part to pay them, except to the amount of goods actually sold by him every three months. Yet he admits receiving a letter, dated September 23, 1904, from the manufacturing company as follows: "We beg to acknowledge receipt through our Mr. Bell of your four acceptances for $95.00 each, all dated September 15, and due in 3–6–9 and 12 months, which we have passed to your credit in settlement of your invoice." Appellant further says that he did not know that the acceptances he signed were notes, until September 23, 1904, and again that he was not sure they were notes until December. But on December 9, 1904, appellant wrote a letter to the Puritan Manufacturing Company which either convicts him of being untruthful or of having a very poor memory. In that letter, among other things, he says: "Times are very hard in my neighborhood owing to the dullness in the mills. When I placed my order, I fully expected to sell enough of your goods to pay the notes as they became due." Now this clearly refers to the order for the goods, dated August 18, 1904, nearly a month before what he calls the notes were signed. In the same letter he says: "At the time of arrival of goods I asked your Mr. Paul to make the time of payment 6, 8, 10, 12 months respectively, same as he offered to Mr. Burk of 11th and Girard ave. This he refused to do, but stated that if I was unable to meet the note due next week to write to you and explain the situation to you, same as I did to him, and you would grant the extension beyond a doubt. Gentlemen: I am up against it good and hard and it is absolutely impossible for me to meet the note next week. Will pay you for what goods I have sold, and if you can grant me an extension of sixty days on the balance, will be able to meet it when due, or if I am able to pay sooner will certainly do so." It seems

to us idle for the appellant to contend, in the face of the evidence furnished by himself, that he did not sign and deliver the acceptances in suit with a full knowledge that they were obligations given in payment of the jewelry sold and delivered to him by the Puritan Manufacturing Company. If this is so, how absurd it was for him to contend at the trial that he was not liable for the acceptances held and sued upon by the Johnson County Savings Bank. There is ample ground for a reasonable contention that, under all of the evidence in this case, the defendant would fail to establish his contention if the suit had been in favor of the Puritan Manufacturing Company. But the view we take of the case relieves us from deciding that question. All of the evidence admitted, as well as the competent evidence (if any) rejected by the court is wholly insufficient to invalidate the drafts in the hands of an innocent holder before maturity for value and without notice of any ground of defense by the acceptor.

The negotiable instruments Act of May 16, 1901, P. L. 194, provides as follows:

"Section 51. The holder of a negotiable instrument may sue thereon in his own name, and payment to him in due course discharges the instrument.

"Section 52. A holder in due course is a holder who has taken the instrument under the following conditions: 1. That it is complete and regular upon its face. 2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact. 3. That he took it in good faith and for value. 4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.

"Section 56. To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

The testimony clearly shows that the appellee purchased the paper in suit in due course of business, for value, without notice

and before maturity, and, therefore, the learned court below was clearly right in directing a verdict for the plaintiff. Upon this point the appellee made a prima facie case by the paper and rested. The appellant then went into the enemy's camp and took depositions and read them in evidence, and they affirmatively show all that is requisite, in the case of negotiable paper, to vest in the holder a good title free and clear of all defenses which might have been made by the acceptor as against the drawer.

"Fraud is not to be presumed. It must be clearly proved; or it may be inferred from facts, clearly proved, leading to that conclusion:" Jackson et al. v. Summerville, 13 Pa. 359. That case is cited and recognized in Lasher v. Medical Press Co., Ltd., 203 Pa. 313, and we followed it in King v. Grannis, 29 Pa. Superior Ct. 367. We do not find in the record sufficient evidence of fraud to affect the title of the appellee to the paper in suit. The portions of the act of 1901, above quoted, are but a restatement of the law as it has long been recognized in Pennsylvania. The rule is that it is not sufficient to show suspicious circumstances, such as might lead a person taking paper by indorsement to make inquiry, but actual mala fides must be proved: Phelan v. Moss, 67 Pa. 59. In that case the Supreme Court said: "Where the bill has passed to the plaintiff without any proof of bad faith in him, there is no objection to his title . . . . that even gross negligence is not alone enough to destroy the title of a holder for value; but that a case of mala fides on the part of such holder, must be made out in order to defeat his claim." Phelan v. Moss is quoted with approval by Mr. Justice FELL in Lancaster County National Bank v. Garber, 178 Pa. 91.

"The bona fide holder of a negotiable note for value without notice can recover on it, notwithstanding he took it under circumstances which ought to excite the suspicion of a prudent man:" Second Nat. Bank v. Morgan, 165 Pa. 199. See also Moorehead v. Gilmore, 77 Pa. 118, where Mr. Justice SHARSWOOD said: "The latest decisions both in England and this country have set strongly in favor of the principle that nothing but clear evidence of knowledge or notice, fraud or mala fides, can impeach the prima facie title of a holder of negotiable

paper taken before maturity. . . . It is of the utmost importance to the commerce of the country that it should be sternly adhered to, however hard may be its operation in particular cases."

But in the present case we see no ground for sympathy because it is a hard case. The appellant evidently purchased a lot of cheap trash jewelry, very well knowing its character. He expected to sell it to his customers and make money out of them by so doing. If he knew it was cheap and comparatively worthless stuff, his intention to profit by selling it was on a par with the conduct of the Puritan Manufacturing Company in selling the stuff to him. The testimony tends to show that the appellant is a business man of fair intelligence, and we do not think this case calls for any sympathy for him.

Complaint is made that the learned court below excluded evidence tending to show independent transactions between the Puritan Manufacturing Company and other parties. We do not think the court erred in excluding such testimony. There is nothing in the present case which would warrant permitting the appellant to resort to that character of evidence. In Veit v. Class & Nachod Brewing Co., 216 Pa. 29, it is said in the syllabus: "It is an established rule, applicable alike to civil and criminal inquiries, that the commission of the act charged cannot be proved by showing a like act to have been committed by the same person. In 1 Wigmore on Evidence, p. 230, the rule is stated thus: "In other words, it cannot be argued, because A did an act last year, therefore he probably did the act as now charged. Human action being infinitely varied, there is no adequate probative connection between the two."

The question in the present case is confined to what took place between the Puritan Manufacturing Company's representatives and the appellant, and there is nothing in the whole record to impeach the title to the negotiable paper in the hands of the appellee.

We deem it unnecessary to discuss the thirteen assignments of error separately and they are all dismissed and the judgment is affirmed.