# Detroit Savings Bank *v.* Towers, Appellant.

*Promissory notes—Defenses—Notice—Evidence.*

Where several promissory notes are given to secure the deferred payments on a machine guaranteed by the seller, and three of the notes are discounted by a bank, the third subsequently to the payment of the first, the maker cannot defend in a suit by the bank on the third note, because the bank prior to the discounting of any of the notes had through its president, inspected the contract for the purchase

of the machine showing the guaranty and the right of the purchaser to defend against the payee for a breach of the guaranty, and providing that the notes were to be "with discount."

Argued Nov. 17, 1909. Appeal, No. 166, Oct. T., 1909, by defendant, from judgment of C. P. Chester Co., Jan. T., 1909, No. 32, on verdict for plaintiff in case of Detroit Savings Bank v. Michael Towers. Before RICE, P. J., HENDERSON, MORRISON, HEAD, BEAVER and PORTER, JJ. Affirmed.

Assumpsit on a promissory note. Before BUTLER, J.

The note was as follows:

"Phœnixville, Pa., May 20, 1908, three months after date I promise to pay to the order of Woodbridge Machine Works at the National Bank of Phœnixville, One Thousand Dollars without defalcation for value received.

"(Signed)    MICHAEL TOWERS."

Indorsed as follows: Woodbridge Machine Works, J. S. Woodbridge; the Detroit Savings Bank, Detroit, Mich.; Corn Exchange National Bank, Philadelphia; Farmers' & Mechanics' National Bank of Phœnixville.

The note was given in pursuance of the following contract:

"This agreement, made this 19th day of February, A. D. 1908, by and between John S. Woodbridge, trading as Woodbridge Machine Works, of Detroit, Wayne County, Michigan, party of the first part, and Michael Towers, of Phœnixville, Pa., party of the second part.

"Witnesseth, That the party of the first part undertakes and agrees to manufacture, sell, deliver F. O. B. Cars Detroit, and set up in the plant of the Schuylkill Valley Match Company, at Phœnixville, Pa., the following described machine, at the prices and upon the terms hereinafter set forth, to-wit:

"One continuous double dip match machine to contain 1,800 cold rolled steel plates—one set of cutters—paraffine pan and pot, to be fitted with brass or copper coils; also 100 extra steel plates and 100 extra cutters for said machine.

"Party of the first part guarantees that the above mentioned machine shall be constructed of the best material, and

shall be of first-class workmanship in every particular, and when delivered and erected shall be in good working order and do good work, and shall have a match cutting speed of 200 strokes a minute.

"Party of the first part further guarantees that the said machine with proper care will last a life time by the renewal of such wearing parts as the slides, punches and cutters, which naturally will wear out in time.

"Party of the first part agrees that the said machine shall be completed and delivered during April, 1908, and set up immediately after advice of its arrival at Phœnixville, barring all acts of Providence, serious fire, strikes, or other causes beyond his control.

"The party of the second part hereby agrees to pay the said party of the first part for the above-named machine the sum of Six Thousand Five Hundred Dollars ($6,500), as follows, to-wit:

"$1000 (One thousand Dollars) down upon the execution of this agreement, the receipt whereof by the party of the first part is hereby acknowledged.

"$1000 (One thousand Dollars) every thirty (30) days from the date of this agreement until Six Thousand Dollars ($6000) is paid, and the remaining Five Hundred Dollars ($500) in thirty days (30) thereafter. The first payment cash, the balance in payments 3 months notes with discount.

"In witness whereof the parties hereto have hereunto set their hands this day and year first above written.

"Woodbridge Machine Works.

"per HENRY STUREO.

"In presence of

"MICHAEL TOWERS."

Other facts appear by the opinion of the Superior Court.

Verdict and judgment for plaintiff for $1,046.02. Defendant appealed.

*Errors assigned* were (1) in overruling an offer to prove a breach of the guaranty, and (2) in giving binding instructions for plaintiff.

*J. Frank E. Hause,* with him *W. E. Bushong,* for appellant.—Circumstances that might excite suspicions of a prudent man are very properly held not to be sufficient to justify proof of a defense that would be good between the original parties: Phelan v. Moss, 67 Pa. 59; McSparran v. Neeley, 91 Pa. 17; Bank v. Morgan, 165 Pa. 199; Post v. Ry. Co., 171 Pa. 615; Gazley v. Riegel, 16 Pa. Superior Ct. 501; Heard v. Shedden, 113 Ga. 162 (38 S. E. Repr. 387); Studebaker Co. v. Dickson, 70 Mo. 272.

*G. G. Cornwell,* of *Cornwell & Cornwell,* for appellee.—Knowledge on the part of the holder, at the time he took the note, that it was not to be paid on a specified contingency, is not sufficient to defeat his right to recover, although the contingency had then happened, if he was ignorant of this fact: citing Adams v. Smith, 35 Me. 324; Ferdon v. Jones, 2 E. D. Smith, 106; Davis v. McCready, 4 E. D. Smith, 565; Bank v. Arnold, 187 Pa. 356; Swift v. Smith, 102 U. S. 442; Phelan v. Moss, 67 Pa. 59; Moorehead v. Gilmore, 77 Pa. 118; McSparran v. Neeley, 91 Pa. 17; Second National Bank v. Morgan, 165 Pa. 199.

OPINION BY HEAD, J., March 3, 1910:

This was an action by the indorsee of a negotiable promissory note against the maker. It is not denied that the note in suit, which was dated May 20, 1908, and called for the payment of $1,000, in three months after its date, was a negotiable instrument; nor that it was regularly discounted by the plaintiff bank on July 9, 1908, before maturity, for value, and in the regular course of business. The sole question presented by this record is, Was there any evidence of any notice to the plaintiff, at the time of the discount, of any fact which as between the plaintiff and the maker would destroy the negotiable character of the instrument and convert it from an absolute unconditional promise to pay, into a conditional obligation against which the maker might set up any defense that would have been available to him had the action been against him by the payee in the note?

It appears that in February of that year the maker of the

note entered into a written contract with the Woodbridge Machine Works of the city of Detroit for the purchase of a match-cutting machine. In that contract the manufacturer guaranteed "that the above mentioned machine shall be constructed of the best material and shall be of first class workmanship in every particular, and when delivered and erected shall be in good working order and do good work, and shall have a match-cutting speed of two hundred strokes a minute. For this machine the purchaser agreed to pay $6,500 as follows: $1,000 down upon the execution of this agreement; $1,000 every thirty days until $6,000 is paid, and the remaining $500 in thirty days thereafter. The first payment cash, the balance in payments three months notes with discount."

The evidence further discloses that after the machine company had received these notes it endeavored to have at least several of them, and perhaps all of them, discounted by the plaintiff bank, and that in seeking to effect this arrangement the machine company exhibited to the president of the plaintiff bank the contract, the material parts of which we have quoted. The plaintiff bank then agreed to discount one note dated March 20, 1908, and calling for the payment of $1,000. The discount was made on March 26, and the note remained in the hands of the plaintiff bank until its maturity, when it was forwarded for collection and duly paid by the maker without objection on June 26. Meantime, on April 24, the bank discounted another note of this series, dated April 20, for a like sum, and this note was likewise retained by the bank until its maturity, and was paid by the maker without objection on July 20.

On July 9, the plaintiff bank made a third discount, of the note in suit, which was already stated was dated on May 20. When this note matured it was also forwarded for collection, but the maker declined to pay it, and this action followed. The maker alleges that as between him and the payee, there was a breach of the latter's contract of guaranty, in that the machine would not do the work stipulated for in his contract, and because this contract had been, prior to the discount of

the first note, exhibited to the president of the bank, it is contended that the maker may successfully interpose in this action the defense he might have made to an action by the machine company to recover any unpaid balance of the purchase price.

We cannot attribute any such effect to the mere inspection of the written contract by the president of the bank, even if by reason of that fact the bank is visited with full knowledge of every fact in the agreement stated.    It undoubtedly showed that there had been a legitimate commercial transaction between the payee and the maker, and that the notes were therefore given for value, and were not the mere accommodation paper of the maker.    It further showed that the maker did not intend to retain in his own hands the purchase money, until it had been actually demonstrated that the machine was up to the guaranty, because the contract provided that he was at once to give his promissory notes for the purchase money.    And the paper further bears internal evidence that it was within the contemplation of both of the parties that these notes would be, or at least might be discounted, because it is stipulated that the maker shall not only give notes but give them "with discount."    We are unable to see anything in this contract, then, which would indicate to the plaintiff bank, after it had been read, that the maker's obligation to pay his notes, even in the hands of an innocent third party, was to be conditional upon the performance of the machine. On the contrary, having taken an express guaranty from the seller, and at the same time having given promissory notes with discount, instead of retaining the purchase money or part of it in his own hands, the natural inference would be that he intended to rely, if the occasion arose, on the guaranty he had taken and the financial ability of the manufacturer to make good that covenant.    And it certainly cannot be said that the record exhibits any evidence that there existed, in fact, any defense to the payment of the note in suit at the time it was discounted, viz.: July 9, 1908, because ten days thereafter the defendant paid without objection the note of April 20, previously discounted.

We can see, therefore, no evidence of any fact calculated even to arouse the suspicion of a man of reasonable care that the maker had any defense to the note, and the doctrine that, where such suspicious circumstances existed, the maker might defend in a suit by the indorsee was long ago repudiated both in England and in this country. In McSparran v. Neeley, 91 Pa. 17, the note was mistakenly antedated and it was not stamped until after it was negotiated. In holding that neither of these facts were material, Mr. Justice WOODWARD said: "But while this has been conceded, it has been argued that the error should have created suspicion and led to inquiry. In Beltzhoover v. Blackstock, 3 Watts, 20, Judge Sergeant concurred in the position taken in Gill v. Cubitt, 3 B. & C. 466, that if an indorsee takes a note heedlessly, and under circumstances which ought to have excited the suspicions of a prudent and careful man, the maker or indorser may be let into a defense. In Phelan v. Moss, 67 Pa. 59, however, it was expressly declared that Gill v. Cubitt was not law in Pennsylvania, and it was decided that the existence of suspicious circumstances alone will not defeat an indorsee's right to recover, but that in order to defeat his title mala fides on his part must be proved. So in State Bank v. McCoy, 69 Pa. 204, Judge WILLIAMS held, that even 'if the evidence had made out a case of gross carelessness on the part of the bank that alone would not have been sufficient to defeat his title to the note. There must have been proof that the bank took it mala fides or with notice of the fraud.' And it was said in Moorehead v. Gilmore, 77 Pa. 118, that 'the latest decisions, both in England and this country, have set strongly in favor of the principle that nothing but clear evidence of knowledge or notice, fraud or mala fides can impeach the prima facie title of the holder of negotiable paper taken before maturity.'"

In Craig v. Sibbett & Jones, 15 Pa. 238, GIBSON, C. J., said: "There is no plausible pretext for refusing to pay this bill; for it is not pretended that the plaintiffs below, who discounted it in the regular course of their business, did any act which was not consistent with perfect good faith. They knew it was drawn against flour supposed to have been

shipped in a regular course of dealing between the drawer and the acceptors; but they had discounted other bills between the parties, which were paid at maturity; and if they had not, they would have had no reason to suspect that a fraud was meditated by the drawer in this particular instance." See also Moorehead v. Gilmore, 77 Pa. 118; Bank v. Morgan, 165 Pa. 199; Bank v. Reneker, 18 Pa. Superior Ct. 192.

In the light of these decisions and many others which might be cited, we can reach no other conclusion than that the learned court below was right in holding that the defendant, in the offer which was refused, presented nothing which would enable him to successfully defend against the payment of his own negotiable note which had been discounted by the plaintiff before maturity, for value, in the usual course of business, and without any notice of any defense then existing which could be set up by the maker. The assignment of error is therefore overruled.

Judgment affirmed.