## Bowman et al. *versus* The Cecil Bank.

1. A bill drawn by one to his own order and indorsed by other parties, and followed by his own indorsement, is *prima facie* evidence that the other indorsements were made for his accommodation, and throws upon the plaintiff the burden of proving that a firm indorsement made by one of the partners, was made with the consent of the co-partners.

2. The law does not presume that one partner is agent for his co-partners to indorse as surety for others, or outside of the sphere of ordinary mercantile partnerships.

3. If a bank of another State establishes an agency in this State, to discount bills with its own notes, it is in violation of the law of 28th March, 1808, and the bank acquires no title to the bills so discounted, and can maintain no action for their collection.

4. The 50th section of the Pennsylvania banking law of 1850, does not apply to banks chartered by the laws of other States.

5. The fact that Tomb & McCurdy received money from the Cecil Bank, Maryland—used it for discounting purposes—sent the paper thus obtained to the bank—regularly rendered accounts to it, and received from the bank a compensation for their services, is sufficient evidence that they kept a banking house for the said Cecil Bank.

ERROR to the Court of Common Pleas of *Lycoming County.*

The plaintiffs in error were defendants below.

Assumpsit. On the 20th day of May, A. D. 1856, Peter M. Hanna drew his bill of exchange on Thomas & Rogers, of Baltimore, as follows:—

"$400.    WILLIAMSPORT, May 20, 1856.

Sixty days after date, pay to the order of myself, four hundred dollars, value received, and place to account of

PETER M. HANNA.

Thomas & Rodgers,
    . Baltimore, Maryland."
    Indorsed "Wm. McKinney,
            Bowman, Mabie & Co.,
            Peter M. Hanna."

The bill of exchange, so indorsed, was taken to Messrs. Tomb & McCurdy by Peter M. Hanna, some time before its maturity, who discounted the same for him, as the agents of the Cecil Bank of Maryland, and paid him the proceeds.

Tomb & McCurdy received the notes of the Cecil Bank, with which they discounted notes and bills of exchange. These notes and bills they were accustomed to charge up and send to the Cecil Bank. For doing this business they received a compensation from the Cecil Bank, varying with the amount of business done, from five to nine hundred dollars per annum. The indorsement of the name of the firm of Bowman, Mabie & Co., on the bill of exchange, was made by A. K. Mabie, one of the members of the firm, without the knowledge of Messrs.

VOL. I.—3

Bowman & Vanderbelt, the other partners, for the accommodation of Peter M. Hanna, the drawer.

At its maturity the bill was presented to Thomas & Rogers, who answered that they had no funds, and was duly protested, and notice given to the indorsers.

Defendants requested the court to charge

1. That if the jury believe that Peter M. Hanna brought this note to the agents of the Cecil Bank, with all the indorsements upon it, and received the money for the same, that these facts were sufficient evidence to the said bank that it was accommodation paper, and sufficient to put said bank on inquiry as to the assent of the partners to the indorsement.

2. That the Cecil Bank were bound to know the business of Bowman, Mabie & Co.

3. That if the jury believe, from the evidence in the case, that this note was discounted by the agents of the Cecil Bank, an institution incorporated by the State of Maryland, that the establishment of agencies in this State was a penal offence, under our act of Assembly, in all concerned in establishing such agencies; and that therefore the plaintiffs cannot recover.

All of which the court answered in the negative.

The plaintiff requested the court to charge that if the jury believe the evidence in this cause, this bill was, at the time it was received by the plaintiffs, a negotiable instrument payable to the bearer; was received by him in the ordinary course of his business, and for a good and valuable consideration; the plaintiff therefore took it free from all infirmities of which he had no knowledge at the time, and is *prima facie* a *bona fide* holder entitled to recover. The single fact that the drawer was the bearer of the note, negotiated its discount and received the proceeds, is not sufficient to throw upon the plaintiff the burthen of proving that the indorsement was made with the knowledge of the members of the firm, or that the transaction was within the ordinary business of the firm.

To which the court gave an affirmative answer, and told the jury that, under all the evidence in the cause, plaintiff was entitled to recover.

The answers of the court were assigned as errors.

*Destrick* and *Scates* for plaintiffs in error.

One principle runs through all the cases on this subject, both English and American, and that is this—if a person takes paper purporting to be drawn or indorsed by a partnership, knowing from the paper itself or from surrounding facts and circumstances, that it was not given in a partnership transac-

tion and for partnership purposes, the partnership will not be bound by it.

One of the points raised in this case, is, whether the fact of the draft being drawn by Hanna to his own order, and being taken by him to Tomb & McCurdy, the agents of the Cecil Bank, and his having received the money for the same, was not sufficient to put the plaintiff upon inquiry as to the assent of the other partners to the indorsement.    *Tanner* v. *Hall*, 1 Barr, 417; *Laverty & Gantly* v. *Burr & Baldwinn*, 1 Wend. 529; *Bank of Rochester* v. *Bowen et al.*, 7 Wend. 159; *Gansevoort* v. *Williams et al.*, 14 Wend. 133; *Joyce* v. *Williams et al.*, id. 147.

As to the second error, the court certainly erred in answering this point in the negative.    *Tanner* v. *Hall & Easton*, 1 Barr, 419.

As to the third error.    The act of the 28th March, 1808, section 2d, is as follows: "No company incorporated by the laws of any other of the United States, shall be permitted to establish within this Commonwealth, any banking house, or office of discount and deposit; and all and every person or persons who shall, in violation of this act, be concerned in any such establishments, on conviction thereof in any court of justice within this State, shall for every such offence, forfeit and pay for the use of the same, the sum of two thousand dollars; and the private estate of such person or persons offending as aforesaid, shall be liable for the payment of such forfeiture."    4 Sm. Laws, 537.

By sect. 50 of the act of April 16, 1850, the banks of this State, or of any other State, are prohibited from "establishing, maintaining or continuing directly or indirectly, in the name of one or more individuals in any manner or by any device whatever, either for its own sole benefit and profit of its officers, or any of them, in whole or in part, any branch or agency for the transaction of banking business, or the issuing out of, or circulation of its notes at any other place than that fixed and named in its charter for its location and the transaction of its business, without the express authority of an act of Assembly of this Commonwealth to do so."    Any infraction of this act by any bank of this State, to be deemed a forfeiture of its charter.    We cannot reach a foreign bank in any other way than by refusing to aid it in recovering notes discounted like the present, in violation of our laws.

We tax our own banks heavily for the privileges granted them, and we are bound to protect them in their enjoyment. From Mr. McCurdy's evidence, there can be no doubt but that the Cecil Bank discounted this in violation of the above acts of Assembly.

[Bowman et al. *v.* The Cecil Bank.]

The statute of 57 Geo. III. 99, prohibits spiritual persons from trading; it was held that a joint stock company, in which a beneficed clergyman held shares could not sue as endorsee on a bill of exchange. *Hall* v. *Franklin*, 3 M. & W. 259, 1 Hor. & W. 8 S. C.

"An action founded on a transaction prohibited by statute, cannot be maintained, although a penalty be imposed for violating the law, and it be not expressly declared that the contract is void." *Seidenbender* v. *Charles's adm's*, 4 S. & R. 150.

As to the fourth error, the court were certainly wrong in taking this case from the jury, and in charging "that under all the evidence in the cause, plaintiffs were entitled to a verdict."

*I. and Wm. H. Armstrong*, for defendant in error, cited *Gilchrist* v. *Rogers*, 6 W. &. S. 488; *Stafford* v. *Latchan*, 3 W. 165; *Miller* v. *Cresson*, 5 W. & S. 284; *Fevera* v. *Sayres*, id. 210; *Haines* v. *Stoufer*, 10 Barr, 365; *Cobb* v. *Fogalman*, 1 Iredel, 448; *Urket* v. *Coryell*, 5 W. & S. 85; *Osborn* v. *U. S. Bank*, 9 Wh. 830; *Bank of Kentucky* v. *Schuylkill Bank*, 1 Par. 240; *Miller* v. *Maurice*, 6 Hill, 114; Byleston Bills, 105; *Doty* v. *Bates et al.*, 11 Johns. 544; *Ridley et al.* v. *Taylor*, 13 East. 175; *Stewart* v. *U. S. Ins. Co.*, 9 W. 126.

The opinion of the court was delivered October 20th, 1859, by

LOWRIE, C. J.—The very form of this bill is *prima facie* evidence that the defendants below are accommodation indorsers for Hanna, for he drew the bill payable to his own order, and yet he does not indorse it except under the other indorsers. The actual proof that the agents of the bank discounted the bill for the benefit of Hanna, adds force to this *prima facie* evidence. But either is sufficient to throw upon the bank the burden of proving that Mabie indorsed the name of the firm with the consent of the co-partners, for the law does not presume that one partner is agent for his co-partners to indorse as surety for others, or outside the sphere of ordinary mercantile partnerships.

Is the evidence sufficient to go to the jury that Tomb & McCurdy discounted the bill, as agents of the bank? We think that the facts stated by Thomas McCurdy, relative to their dealing with the bank, is evidence of this. The fact of agency hardly seems to be material for charging the bank with notice that the indorsements were for the accommodation of Hanna, and since the form of the bill shows this. But it becomes material in the consideration of another line of defence taken in the case.

The defendants insist that such agencies of the banks of

[Bowman et al. *v.* The Cecil Bank.]

other States, in this State, are forbidden by our law; and that therefore they acquire no title to bills and notes by means of such agencies. We think that this consequence follows if the prohibition exists. 1 Binn. 117; 6 id. 329; 4 Sergt. & R. 159; 7 W. &. S. 234; Cowp. 34; 3 Term R. 454; 5 id. 242, 529; 3 ˇMees. & W. 259.

Are such agencies prohibited. The 50th section of ·Bank Law of 1850, prohibits the banks of this or any other State from establishing such agencies elsewhere than is allowed by their charter; and the penalty is forfeiture of their charter— that is, from the transgressing the law of their creation—and the penalty is forfeiture of their charter, and quadruple taxation for so long as they may have transgressed. Very evidently our legislature can make no such law for the banks of other States, and the words applying it to them have been thrown into the section by an after thought, without observing that no part of the section can be referred to them without torturing the sense. These words being inoperative, this section does not answer our question. The act of 28th March, 1808, prohibits the banks of other States from establishing here " any banking house or office of discount and deposit, under penalty of $2000, against every person concerned in the act." There is evidence that Tomb & McCurdy received money from the Cecil Bank, Maryland, used it for discounting purposes, sent the paperˌ thus obtained to the bank, regularly rendered accounts to it, and received from the bank a compensation for their services. This, we think, is sufficient evidence to entitle the jury to find that they keep a banking house for the plaintiff, though McCurdy does say that they have no agency for the bank; of course, a full exposition of the relation existing between the bank and Tomb and McCurdy, may show that this is not the case. But if the jury find that Tomb & McCurdy kept a banking-house for the plaintiff in this State, and by that means the plaintiff became possessed .of this bill, their title is vicious and they cannot recover.

Judgment reversed and record remitted.

Note.—This case seems in conflict with, if it does not overrule, the case of *Thornton* v. *The Western Reserve Insurance Company*, 1st Grant's ̦ Cases, 472. In each case an act was done, for the doing of which the legislature imposed a penalty. In neither did the law, in words, make the act done, void. In both cases notes had been given by citizens of this State, in consideration of acts done, for the doing of which a penalty had been imposed. In each case a suit had been brought for the collection of the note. In one the court held that the note was good, and that the plaintiff was entitled to recover, and in the other that the plaintiff could not recover.