IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

MIDDLE DISTRICT—HARRISBURG 1879.

## McSparran, Admr., *versus* Neeley.

| 91 | 17 |
| 165 | 205 |
| 91 | 17 |
| 178 | 98 |
| 91 | 17 |
| 213 | 311 |

1. The endorsee of a negotiable note, who took it before maturity, bona fide, for value, without notice, is entitled to recover from the maker, though a fraud was practised on the maker in obtaining his signature to the note.

2. The defence of drunkenness in the maker cannot be set up against the innocent holder of a negotiable note.

3. The fact that a negotiable note which was obtained by fraud was taken by the holder under circumstances which ought to have excited suspicion, will not defeat a recovery; it must be shown that it was taken *malâ fide*.

4. The date of a note is not essential to its validity, and where the purposes of justice require it the real date may be inquired into and effect given to the instrument.

5. State Bank *v.* McCoy, 19 P. F. Smith 204, and Phelan *v.* Moss, 17 Id. 59, followed. Green *v.* North Buffalo Twp., 6 P. F. Smith 110; Schuylkill County *v.* Copley, 17 Id. 386; Unger *v.* Boas, 1 Harris 601, and Bowman *v.* Cecil Bank, 3 Grant 33, distinguished.

May 31st 1878. Before AGNEW, C. J., GORDON, WOODWARD and TRUNKEY, JJ. SHARSWOOD, MERCUR and PAXSON, JJ., absent.

Error to the Court of Common Pleas of *York county :* Of May Term 1878, No. 78.

Assumpsit upon a promissory note by William McSparran, administrator of John G. Williamson, deceased, against Thomas Neeley. The declaration filed January 19th 1875, set forth the plaintiff's cause of action as founded on a promissory note drawn by said John G. Williamson, deceased, on the 24th of January, 1872, bearing date by mistake, January 24th 1871, for $737.37, to J. L. Lawrence, or order, in ninety days after date, which said

10 NORRIS—2                                                    (17)

[McSparran *v.* Neeley.]

note the said deceased, in his lifetime, delivered to said Lawrence who before the maturity of said note, endorsed and delivered the same to plaintiff for value. The declaration also contained the usual common counts in assumpsit.

The defendant, on February 12th 1876, filed an affidavit of defence, alleging "that the deponent was a brother-in-law of deceased and attended to most of his business, in his lifetime, and denying that deceased was ever indebted to said Lawrence in the sum of money mentioned in said promissory note, and alleging that said note was procured by fraudulent means; that at the time it is pretended by plaintiff that said note should have been dated, to wit, January 24th 1872, instead of the day it bears date, in the year 1871, the said Williamson was incapacitated from doing business, by reason of intemperance, and was partially blind and unable to read, and otherwise unfit to transact business; that shortly before that time, the said Lawrence and Williamson had squared accounts between them, and that the indebtedness of Williamson to Lawrence, at that time, was but a small amount; that Williamson died shortly after that time, and between that time and the time of his decease viz.: February 22d 1872, could not have contracted the amount of indebtedness mentioned in the said promissory note, or made any contract from which such liability could arise; that plaintiff took said note from the payee, after it became due, according to the date of the same, and which was, on its face, overdue, about nine months; that the said promissory note bearing date a certain day was notice to the plaintiff thereof, and that he cannot now set up another date, whether by mistake or otherwise; that this should have put plaintiff upon inquiry as to the execution of the note from the maker of the same as well as the payee, and by that means have ascertained the truth as to the genuineness of said note."

The case by the agreement of the parties was referred to a referee, under the provisions of the Act of Assembly, entitled "An act in relation to pleading and judgment, voluntary arbitration and additional return days for writs, in the Courts of Common Pleas in the Nineteenth Judicial District of Pennsylvania, and the practice of the said courts therein," approved April 9th 1868.

From the evidence the referee found the following facts:

John Grier Williamson, on the 24th of January 1872, executed and delivered to one J. L. Lawrence a promissory note, of which the following is a copy:

York, Pa., Jan. 24th 1871.

Ninety days after date I promise to pay to J. L. Lawrence, or order, seven hundred and thirty-seven dollars and thirty-seven cents, for value received.

J. G. WILLIAMSON

Before the maturity of this note, Lawrence, the payee, endorsed and delivered the same to Thomas Neeley, who gave to Lawrence for said note $500 in currency. John G. Williamson, before he acquired habits of intempeance, was a man of intelligence and vigorⁿous intellect. During the latter period of his life, his vision became, by reason of gross intemperance, impaired, his body partially paralyzed, and his mental powers weakened. When, however, he was sober, he was capable of transacting his business affairs in a proper manner, until within a short time previous to his decease. Within two or three months from the time of his decease he transacted business, in a methodical way, with a number of different parties, and within six or seven weeks prior to his death, he directed a person to whom he was indebted to write an order for the payment of money, which he signed, but before signing required the spelling of a word in the order to be corrected.

On the morning of January 24th 1872, Lawrence came to the house of Williamson and had with him a number of gallons of liquor. Williamson was sober early in the morning when Lawrence was there. Williamson, Lawrence and another drank together. Williamson was pretty drunk. Lawrence wanted his note. Williamson said he could not see to write. Lawrence drew the note himself. Williamson said he would sign the note mechanically. The note was read by Lawrence. The note called for thirty-seven dollars and some odd cents. Williamson asked to hear it read. By the time Lawrence went away, Williamson was very tight— drunker than he was before. It does not appear that the plaintiff, when he purchased the note from Lawrence, had any notice of the facts and circumstances attending the making and execution thereof. Williamson died on February 22d 1872, and letters of administration on his estate were granted to William McSparran, the defendant.

Exceptions were filed to the report of the referee, which the court dismissed and confirmed the report.

The following assignments of error will show what these exceptions were and how the various questions were raised:

1. The referee erred in finding as a fact in the case that before the maturity of the note Lawrence, the payee, endorsed and delivered the same to Thomas Neeley, who gave to Lawrence for said note $500 in currency.

2. In finding that the plaintiff is a bona fide holder for value, without notice of the fraud.

3. In stating the questions of law involved in the case to be, whether the note, according to its face being overdue, was sufficient to excite suspicion and put plaintiff upon inquiry, and also whether the date of the note may be proved a mistake; and ruling said questions separately in favor of the plaintiff, whereas the question of law

[McSparran *v.* Neeley.]

involved is, whether the face of the note showing it to be upwards. of nine months overdue does not prevent him from being a bona fide holder for value in the usual course of business, and therefore whether it was not the duty of the plaintiff to make inquiry and ascertain the facts of the case, namely, that the note was obtained from a person incapacitated from doing business and partially blind from habitual drunkenness, by means of a false representation of the amount of the note, which was in effect a forgery.

4. In rejecting the testimony of Robert Torbert, to prove that he was living on the farm of Williamson in January 1872, and was frequently in his house; that he saw Lawrence come there on January 25th 1872; that he had with him a five gallon keg and a two gallon jug of whiskey; that he was in the room when Williamson and Lawrence were together that day, and that he was asked to hear the reading of a note; that Williamson was very drunk at the time and said he could not see to read it and that Lawrence read it to him, thirty-seven dollars and some odd cents, and witness saw Williamson sign the note and Lawrence left while witness was there; that nothing was said between them about money matters except this note of thirty-seven dollars and some cents, and no other amount was mentioned, and that witness was well acquainted with Williamson and his habits.

5. The referee erred in affirming the plaintiff's first point, as follows:

" The evidence proves that the plaintiff purchased the note in suit within about one month after it was, in point of fact, made and issued by the defendant's intestate to Lawrence, the payee therein, and the plaintiff's rights, as endorsee of the note before maturity, for value, are to be judged of and determined as of the time when he, in point of fact, purchased the note from Lawrence and parted with his money therefor; and the mistake of the year in the date of the note in nowise affects his right to recover, if otherwise entitled to recover."

6. In affirming the plaintiff's second point, as follows:

" When a wrong date has, by mistake or inadvertence, been placed to a note, the actual time of the making, issuing or transfer of the same may be shown; and parol evidence is admissible for that purpose.

7. In affirming the plaintiff's third point, as follows:

" The defendant having failed to bring home to the plaintiff any knowledge of any defence or alleged defence to the note in suit which existed or might be alleged to exist, as between the original parties to the note, before the purchase of the same by the said plaintiff, cannot now set up such defence against the plaintiff in this suit, he being an innocent purchaser of the same before maturity for value, without notice of any defence."

8. In negativing the defendant's first point, as follows:

"That the date of the note in suit, as appears on its face, namely, January 24th 1871, was sufficient notice to Thomas Neeley, the alleged endorsee for value of the same, to put him upon inquiry as to the origin of the note, plaintiff having proved that the same was endorsed to Thomas Neeley one year after said date."

9. In negativing the defendant's second point, as follows:

"That the date of said note, upon its face, was such as to make it appear overdue, and it was, therefore, not transferred in the usual course of business as a note not yet due, so as to constitute the holder a bona fide holder for value without notice, with the benefit of such."

10. In negativing the defendant's third point, which point and answer are as follows:

"That if the referee believes that Williamson, the plaintiff's intestate, was mentally incapacitated by reason of habitual drunkenness, and had fraudulently imposed upon him for his signature, a note for $737, the said note was void, and as in the case of a forged note the payee could pass no title to the endorsee of the same."

Ans. "The referee says, this point is correct if the mental incapacity of Williamson amounted to perfect imbecility. But if the incapacity was not permanent, and he was able, when sober, to transact business in a proper manner, then the note was not void in the hands of an innocent holder, although it was signed by Williamson, when he was drunk and unfit to transact business."

11. The referee erred in his answer to the defendant's fourth point, which point and answer are as follows:

"That if the referee believes that the said note was read by said Lawrence to Williamson, as a note for $37.37, instead of $737.37, and that the said Williamson was at the time unable to see so as to read, or was incapable of transacting business in consequence of the effects of excessive and long continued use of strong drink, the said note was void in the hands of the payee, and he could pass no good title to the same."

Ans. "This point of law is correct, if the inability to see and incapacity to transact business in consequence of excessive drink, were such as to render Williamson permanently blind and imbecile. But if the inability to see and incapacity to transact business were only temporary, then the note was not void in the hands of an innocent endorsee."

12. The referee erred in his conclusions, that the matters proposed to be set up as a defence to the payment of the note in suit, do not constitute a legal defence against the plaintiff.

*H. L. Fisher* and *John Gibson*, for plaintiff in error.—We submit that the referee erred in deciding, under the facts of the case,

as a naked point of law, that the defence of drunkenness in the maker cannot be set up against the innocent holder of a negotiable note. The general mental and physical condition of the maker, superinduced by dipsomania, together with the fraud practised upon him, constitute something more than the mere defence of voluntary drunkenness at the time, with this additional feature of the maker not being able to see and read the note for himself, which was falsely read to him. There are impositions which a man, drunk or sober, cannot guard against. The decedent requested the note to be read, and said he must sign it "mechanically."

The vision of the signer of the note was so impaired that he could not do otherwise. He was in the position of a layman, or illiterate person, as in Thoroughgood's Case, 2 Rep. 96, the resolutions of which are quoted by his Honor Judge Agnew, in Schuylkill Co. *v.* Copley, 17 P. F. Smith 389. Under the circumstances of this case the note was not the deed of Williamson; and was a forgery: Schuylkill Co. *v.* Copley, *supra;* Green *v.* North Buffalo Township, 6 P. F. Smith 110; Worrall *v.* Gheen, 3 Wright 396; Michener *v.* Carman, 2 Id. 337. Void notes continue so in the hands of an innocent purchaser: Unger *v.* Boas, 1 Harris 601; Bowman *v.* The Cecil Bank, 3 Grant 33. It was error to allow proof of a mistake in the date of the note: Losee *v.* Bissell, 26 P. F. Smith 459. The character of the note should have put the holder on inquiry.

*W. C. Chapman* and *H. W. McCall*, for defendant in error.— In the cases cited by plaintiff in error, the instruments sued on were bonds and not negotiable paper, and the suits were between the original parties, or where the notes were made void by statute. This case is ruled by Phelan *v.* Moss, 17 P. F. Smith 59, which has been followed by Garrard *v.* Haddan, Id. 82; Zimmerman *v.* Rote, 25 Id. 188; Brown *v.* Reed, 29 Id. 370; Hirst *v.* Hart, 23 Id. 286; Moorhead *v.* Gilmore, 27 Id. 118; Reese *v.* Waubaugh, 2 W. N. C. 145; Battles & Webster *v.* Laudenslager, 3 Norris 446. Where justice requires it, the real date of a note may be inquired into and effect given to the instrument: Story on Promissory Notes, sects. 45, 48; Passmore *v.* North, 13 East 517; Drake *v.* Rogers, 32 Maine 524.

Mr. Justice Woodward delivered the opinion of the court, June 9th 1879.

As between the maker and the payee of the note in controversy, it is not to be doubted that the facts found by the referee would have been amply sufficient to sustain the defence to the plaintiff's claim. Williamson, the maker, at the time when the note was signed, was in a state of extreme physical and mental weakness, brought on by habits of intemperance. His sight had become

impaired and his body had been partially paralyzed. The note was written by J. L. Lawrence, in whose favor it was made, and purported on its face to be for the sum of $737.37. The amount really due from Williamson was $37.37. After the note was written, he asked that it should be read to him, as he was not able to read it himself. Lawrence read it as purporting to be a promise to pay $37.37, the sum for which it was intended to be given. Williamson signed it, in his own phrase, "mechanically." He was under the influence of liquor at the time. Robert Torbert, who was present, testified, according to the printed notes of evidence, that he "was partly drunk." The statement as quoted in the report was, that he "was pretty drunk." Testimony was given before the referee, tending to show that Neeley, the plaintiff below, had knowledge of the fraudulent character of the note before he bought it. Asa Jones swore that Neeley and Lawrence, about the year 1872, pressed him to buy a note for what he regarded as a large amount, although he could not recollect what the amount was. He said he "would call five or six hundred dollars a good deal under the circumstances," but whether the note equalled or exceeded that sum he could not state. The witness could not recall the maker's name. There was testimony also that Neeley, about the time of Williamson's death, had a conversation in relation to this note, with L. W. Finley, in which Neeley said, that in case he collected it, there might be something in it for Finley, who was a creditor of Williamson. Although it was drawn and signed on the 24th of January 1872, the date as written was the 24th of January 1871. It was left unstamped when made, and it was not until the 9th of November 1872, that the proper stamps were affixed, at the request of Neeley, by whom the statutory penalty was paid.

Under these general features of the cause, the ground was taken, on behalf of the defendant in the argument here, in the first instance, that the referee erred in finding that the fact of knowledge by the plaintiff, of the fraud perpetrated by Lawrence, had not been established. The defendant's counsel insisted also, that it was the duty of the referee to find that Williamson had been in a condition of such utter imbecility, superinduced by gross and long-continued intemperance, as, under the rule adopted in Sentance v. Pool, 3 C. & P. 1, to avoid, even in the hands of an innocent endorsee, "the note which he had been induced to sign by fraud and imposition." And it was further urged that in the circumstances of the case—in the mistake in the date, making the note apparently overdue, and in the absence of a stamp—there was enough to put the plaintiff upon an inquiry, which would have disclosed to him the true nature of the transaction; and that, failing to inquire, he was chargeable with all the consequences of actual and complete knowledge.

[McSparran *v.* Neeley.]

But with all the evidence before him, the referee reported that the plaintiff obtained the note for a valuable consideration, bona fide, and without notice that any fraud or imposition had been practised upon the maker. This question was one of fact, and whatever opinion this court might form upon the evidence, if they were required to pass upon it, in the first instance, it is clear that no such palpable mistake has been made as to justify them in overruling the decision of the referee. His report, under the express terms of the Act of the 9th of April 1868, had "the effect of the verdict of a jury," and could be set aside only for causes that would require the setting aside of such a verdict.

Did the facts reported establish such a condition of mental imbecility so complete, as to avoid this note in the hands of an innocent endorsee? The finding was in the following words: "John G. Williamson, before he acquired habits of intemperance, was a man of intelligence and vigorous intellect. During the latter period of his life, his vision became, by reason of gross intemperance, impaired, his body, partially paralyzed, and his mental powers, weakened. When, however, he was sober, he was capable of transacting his business affairs in a proper manner, until within a short time previous to his decease." The testimony of Torbert was recited as explanatory of the circumstances under which the note was signed. The witness had said: "On the morning of January 24th 1872, J. L. Lawrence came to the house of John G. Williamson, and had with him a number of gallons of liquor. Williamson was sober early in the morning when Lawrence was there. Williamson, Lawrence and another drank together. Williamson was pretty [partly] drunk. Lawrence wanted his note. Williamson said he could not see to write. Lawrence drew the note himself. Williamson said he would sign it mechanically. It was read by Mr. Lawrence. It called for thirty-seven dollars and some odd cents. Williamson asked me to hear it read. By the time Lawrence went away, Williamson was very tight—drunker than he was before." The evidence certainly did not make out the existence of insanity or a state of absolute incapacity. Nor did it make out a case beyond the operation of the rule by which The State Bank *v.* McCoy, 19 P. F. Smith 204, was decided. There, fraud on the part of the payee of a note was set up by the maker, in a suit by the endorsee, and it was alleged, that when he signed the note, the defendant was so intoxicated as to be unconscious of the act. In delivering the opinion of the court, Judge WILLIAMS said: "If a man voluntarily deprives himself of the use of his reason by strong drink, why should he not be responsible to an innocent party for the acts which he performs when in that condition? It seems to me that he ought, on the principle, that where a loss must be borne by one of two innocent persons, it shall be borne by him who has occa-

sioned it. * * * But there is another and controlling reason for holding the maker liable to the endorsee in such case, founded on principles of public policy and the necessities of commerce. The exigencies of trade require that there should be no unnecessary impediments to the ready circulation and currency of negotiable paper, but that it should be left free to pass from hand to hand like bank notes, and perform the functions of money, untrammelled by any equities or defences between the original parties. If, then, it should be held that the drunkenness of the maker avoids the note in the hands of the endorsee, it is obvious that such a rule would greatly clog and embarrass the circulation of commercial paper, for no man could safely take it without ascertaining the condition of the maker or drawer when it was given, although there might be nothing suspicious in its appearance or unusual in the character of the signature." Nothing need be added to these well-considered views.

Upon the broad question of the effect of Lawrence's fraud on the note in the hands of the endorsee, the authorities collected and the principles stated in Phelan *v.* Moss, 17 P. F. Smith 59, are conclusive. That case expressly recognised the ruling in Miller *v.* Race, 1 Burr. 452, that bank notes, though stolen, become the property of the person to whom they are delivered bona fide and without knowledge of the larceny, and the ruling in Lawson *v.* Weston, 4 Esp. 56, that if a bill has been lost, and the loser has advertised it in the newspapers, and it is discounted for the person who found it, and so came fraudulently by it, this entitles the person discounting it to recover the amount, if done bona fide and without notice of the way in which the holder became possessed of it. The defendant relied on the authority of Green *v.* North Buffalo Township, 6 P. F. Smith 110, and Schuylkill County *v.* Copley, 17 Id. 386. Both cases were actions on specialties, and both between the parties to the instruments. And in both it was held that where a misrepresentation of the contents of a specialty is made to an illiterate person who executes it, it is not his deed, and he may avoid it. In Unger *v.* Boas, 1 Harris 601, the action was on a note for a gambling debt; and in Bowman *v.* The Cecil Bank, 3 Grant 33, the bill sued upon had been discounted by the agents of a bank in Maryland, doing business outside this state. In each instance, the contract was in defiance of a prohibitory statute, and each was ruled in accordance with the principle recognised in Peacock *v.* Rhodes, Doug. 636, excepting such a case from the operation of the law relating to negotiable securities. None of these precedents, in circumstances or in principles, are applicable in this inquiry. In Worrall *v.* Gheen, 3 Wright 388, the holder sued the accommodation endorser of a forged note. It had been drawn for $50, and after endorsement by the defendant, the maker had so altered it as to make it read as if drawn for $150. To the

extent of the sum covered by the forgery, the defence was sustained. But here the instrument itself was not tampered with.  It passed to the plaintiff in the precise form in which it left the maker's hands.  Phelan *v.* Moss has been uniformly followed, since it was decided.  In Garrard *v.* Haddan, 17 P. F. Smith 82, it was held that if one by his acts, silence or negligence, misleads another, or effects a transaction whereby an innocent party suffers, the blamable party must bear the loss ; and it was said in Zimmerman *v.* Rote, 25 P. F. Smith 188, that the maker of a note must guard the public against frauds and alterations by refusing to sign negotiable paper in such form as to admit of fraudulent practices with ease and without ready detection.  The wrong done to Mr. Williamson was flagrant, but the plaintiff is not therefore to be denied the rights of an innocent holder of commercial paper to which he is entitled under a long-established and firmly-settled legal system.

As a final ground of defence, the irregularities appearing on the face of the note have been urged as sufficient to defeat the plaintiff's claim.  By mistake it was ante-dated, and it was not stamped until after it was negotiated.  It was conceded that the validity of an instrument is not affected by an error in the date, even if it is not dated at all ; the time will be computed from the day when it was issued or made, or, if that cannot be exactly ascertained, from the day when its existence was first established : Story on Promissory Notes, sect. 45.  Notes may be ante-dated or post-dated.  In both cases they will be valid in point of law, unless some statute exists to the contrary ; and where the purposes of justice require it, the real date may be inquired into, and effect given to the instrument : Id. sect. 48.  But while this has been conceded, it has been argued that the error should have created suspicion and led to inquiry.  In Beltzhoover *v.* Blackstock, 3 Watts 20, Judge SERGEANT concurred in the position taken in Gill *v.* Cubit, 3 B. & C. 466, that if an endorsee takes a note heedlessly, and under circumstances which ought to have excited the suspicions of a prudent and careful man, the maker or endorser may be let into a defence.  In Phelan *v.* Moss, however, it was expressly declared that Gill *v.* Cubit was not law in Pennsylvania, and it was decided that the existence of suspicious circumstances alone will not defeat an endorser's right to recover, but that in order to defeat his title *mala fides* on his part must be proved.  So in The State Bank *v.* McCoy, *supra*, Judge WILLIAMS held, that even " if the evidence had made out a case of gross carelessness on the part of the bank that alone would not have been sufficient to defeat his title to the note.  There must have been proof that the bank took it *malâ fide* or with notice of the fraud."  And it was said in Moorehead *v.* Gilmore, 27 P. F. Smith 118, that "the latest decisions, both in England and this country, have set strongly in favor of the principle that nothing but clear evidence of knowledge or notice,

fraud or *mala fides* can impeach the prima facie title of the holder of negotiable paper taken before maturity." The facts found here show neither knowledge by the endorsee, notice to him, nor fraud or bad faith on his part, and the apparent defects in the note cannot stand in the place of requisite affirmative proof

Judgment affirmed.