## OELBERMANN et al. v. NATIONAL CITY BANK OF NEW YORK.
### No. 27.

Circuit Court of Appeals, Second Circuit.
Nov. 4, 1935.

Shearman & Sterling, of New York City (Carl A. Mead, Herbert C. Smyth, and M. Van Voorhies, all of New York City, of counsel), for appellant.

Spence, Hopkins & Walser, of New York City (Ralph B. Evans and Richardson Dilworth, both of Philadelphia, Pa., of counsel), for appellees.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Appellees, the plaintiffs below, are wool merchants of Philadelphia, Pa., and they financed the operations of Robert Smith Company (China), Limited, at Tientsin, China, in the purchase and exporting of wool, by causing a Philadelphia bank to issue, in favor of Smith, its letters of credit which he negotiated at the Tientsin branch of the appellant. At the commencement of such business relations, these were documentary letters

of credit, that' is, letters under which Smith could draw only on delivery of documents showing shipment of the goods purchased. But since it developed that Smith's capital was limited and the purchases were made in the interior, there was inserted, in the letters of credit, a clause, known as the "Red Clause," authorizing the negotiating bank to make advances to the beneficiary without delivery of documents in the event the beneficiary of the attached credit required advances to enable it to pay for wool for the purchase and shipment of which the credit was opened. This authorization, contained in the Red Clause, extended to advances to the extent of 50 per cent. of the credit. The advances were to be repaid when shipping bills and documents were delivered to the bank. Such repayment was guaranteed by the issuing bank.

At the time Smith secured the letters of credit, a separate account known as the "wool account" was opened to handle this part of Smith's business, to differentiate it from a general account Smith had with the appellant's Tientsin branch, known as the "fur account" since it was secured largely by furs. The "fur account" was a credit extended to Smith for his personal business and has also been spoken of in the record as his "general account."

In accordance with the banking custom in China, Smith did not discount notes with the bank for this credit, but was authorized to draw against the bank up to a fixed overdraft limit. To keep the different phases of Smith's business distinct, it was agreed and the practice was to mark all checks from the wool account with that designation.

The contention of appellees, as to the fraud perpetrated, is that two checks Smith drew on the wool account for the Red Clause credit authorized by letter of credit 1030 were deposited in the general account on February 7 and March 25, 1929, after the branch manager of the bank suggested that Smith might do so. These checks were made payable to the order of the appellant and on the days of issuance, when deposited in the fur account, reduced the overdraft of that account by $50,000—the total of both checks. [The currency in China was taels, but we speak of the sums here in dollar equivalents.] The Red Clause

advances made by the appellant under letter of credit No. 1030, as alleged in the complaint, were fully repaid by shipments to appellees. The Red Clause advances on the letter of credit No. 1138, which was not repaid by shipments, amounted to $67,250, and the Red Clause advances under letter of credit No. 3156, which was not repaid by shipment, amounted to $85,250 plus interest—a total of $161,435.12. Some time after the deposit of March 25th, the appellant allowed Smith to withdraw the full amount of these two last Red Clause credits and Smith misapplied some of the proceeds by speculating in furs. The issuing bank in Philadelphia repaid the negotiating bank in Tientsin for the advances the latter had made and was in turn paid by the appellees before these transactions in Tientsin were known. The appellee seeks a recovery of these sums from the appellant.

The theory of the claim is fraud. It is conceded that the negotiating bank owed the appellees no contractual duty, that it was not a trustee, and that it owed the appellees no duty of care.

Mr. Smith testified that prior to the drawing of the two checks which were deposited in the fur account, this account was above the overdraft limit and that appellant's branch manager suggested that as the wool account was not overdrawn, it could have been used to cut down this overdraft.

However, this testimony that North suggested the transfer is so strongly attacked as to make its acceptance doubtful; certainly it is not sufficient to warrant submission to the jury of the issue of actual fraud. It was shown that Smith was unfriendly to the bank and would not withhold evidence that could be used against it. His first explanation of these checks was that they were to repay the advances made from the fur account in the purchase of wool. A member of the appellee's firm went to China investigating and seeking the evidence to fix liability upon the appellant. Despite exhaustive questioning, he failed to bring out the information contained in Smith's testimony. After a threat of criminal prosecution by appellees, held over Smith, the evidence of the alleged suggestion of the branch manager was elicited, and further that when he had complained of the stoppage of his withdrawals of the

fur account at the bank, the branch manager told him he could use the wool account for general business purposes. It was not testified that the branch manager required the reduction of the overdraft; it was merely a suggestion, according to Mr. Smith. But he also testified that at this time the manager told him that "we were allowed to draw on the fur account provided the fur account was kept within reasonable limits by shipments and by cash payments as we sold cargo in Tientsin and from time to time we had cash deposits in other resources."

The appellees did business on a large scale with Smith and had no security whatever from him for large cash advances, authorized by the Red Clause under these letters of credit. There was no evidence that they ever asked the appellant to take any precaution whatever as to the use made by Smith of the sums advanced, nor did they in any way communicate with it. The Red Clause imposed upon the appellant no duty whatever in this respect. The particular form of the Red Clause in these instances required the bank to get nothing more from Smith when he desired the money. His purpose to purchase wool with the money was left to inference only. Smith's withdrawal of the money and later misapplication was a wrong to the appellees, but it is not a wrong for which the bank may be held responsible. It is not shown that the appellant knew of Smith's contemplated misapplication nor that it acquiesced or assisted him in it. The record does not show that the branch manager knew that Mr. Smith, who owned 98 per cent. of the stock of Smith Company, subsequently misappropriated moneys of the appellees.

The theory of appellant's liability seems to be that these two deposits of the funds from the Red Clause credits reduced Smith's indebtedness to the bank. The court charged the jury that the bank was liable "if the defendant suggested to Smith that he use the Red Clause credits, not for the purchase of wool or to pay for wool, but to reduce his own indebtedness to the National City Bank."

The two checks so drawn on the wool account and deposited in the general account did not decrease Smith's total indebtedness to the bank. Smith's aggregate indebtedness to the bank on both accounts before and after the deposit of February 7, 1929, was 166,297.24 taels, and on both accounts both before and after the second deposit of March 25, 1929, was 288,623.72 taels. On February 7, 1929, Smith's debit balance in the general account before the deposit was (minus) –166,447.10 taels; credit balance in wool account before deposit of 36,000 taels was (plus) +149.86; a total indebtedness to the bank before deposit February 7, 1929, of (minus) –166,297.24. Smith's debit balance in the general account after deposit was (minus) –130,447.10 taels; Smith's debit balance in the wool account after deposit was (minus) –35,850.14 taels. Smith's total indebtedness after deposit of February 7, 1929, was (minus) –166,297.24 taels. Smith's debit balance in the general account before deposit of 35,000 taels on March 25, 1929, was (minus) –252,340.56 taels. Smith's debit balance in the wool account before deposit of 35,000 taels on March 25, 1929, was (minus) –36,283.16. The total indebtedness before transfer (minus) –288,623.72 taels; Smith's total balance in the general account after deposit of 35,000 taels on March 25, 1929, was (minus) –217,340.56. Smith's debit balance in the wool account after deposit on March 25, 1929, was (minus) –71,213.16, a total of 288,623.72 taels.

Thus Smith's indebtedness to the bank was not decreased in the slightest by these deposits and the liability of the appellees on their guarantee of repayment of the advances was not increased by these deposits in the general account.

The question is different from that presented where a bank has knowledge of the misapplication of funds by a depositor in a special account. A check drawn upon a special account, and used to pay an indebtedness to the bank, would give notice that the funds were being misapplied. Bischoff v. Yorkville Bank, 218 N. Y. 106, 112 N. E. 759, L. R. A. 1916F, 1059; Manhattan Web Co. v. Aquidneck Nat. Bank, 133 F. 76 (C. C. R. I.); Squire v. Ordemann, 194 N. Y. 394, 87 N. E. 435; Ward v. City Trust Co., 192 N. Y. 61, 84 N. E. 585.

But if a trustee or corporate officer withdraws trust or corporate funds from a special account and deposits them to his own individual account, the bank is not put on notice making it liable for subsequent defalcations. Havana Central R. Co. v. Central Trust Co. of New York,

204 F. 546, L. R. A. 1915B, 715 (C. C. A. 2); Batchelder v. Central Nat. Bank, 188 Mass. 25, 73 N. E. 1024.

The permissive overdraft and account is used in foreign banking similarly to a checking account in which a certain credit would be set up in this country. This is shown in Philippine Nat. Bank v. Bowring & Co., 123 Misc. 89, 204 N. Y. S. 327, affirmed 240 N. Y. 658, 148 N. E. 747, where the party receiving the benefit of an order of credit, containing a Red Clause authorizing advances to pay for merchandise on the delivery of the beneficiary's receipt, had a personal overdraft account with the defendant bank. On presentation of drafts with the required receipt, the bank did not set up a separate account, but merely advanced the credit limit of his personal account by the amount of the drafts. He misapplied the funds and the bank was held not liable. The case is analogous to the one at bar. There it was held that the clause providing such cash as may be required to pay for the merchandise did not impose on the bank a duty to go behind the assurance of the beneficiary; that he was using the bank other than in accordance with the letter of credit.

■ However, it is argued the amount owed in Smith's general account was reduced and that owed under the Red Clause (wool) correspondingly increased, and in this amount it is said that the bank was benefited by receiving the guaranteed payment behind the letter of credit, where before it had only Smith's resources to depend on. Assuming this to be the fact, it would not make the bank liable under the circumstances here for nowhere in the evidence does it appear that the appellant caused or assisted in causing this withdrawal and deposit to be made in the general account. Under the circumstances, it was not wrong for the bank to receive a deposit to the general account drawn on the wool account. Empire Trust Co. v. Cahan, 274 U. S. 473, 47 S. Ct. 661, 71 L. Ed. 1158, 57 A. L. R. 921; First Nat Bank v. G. V. B. Mining Co., 89 F. 439 (C. C. Idaho).

Indeed, some of Smith's private funds had been used in the purchase of wool and this transfer could have been nothing more than a repayment. It would have been different, to be sure, if fraud was shown. In the absence of fraud, satisfaction of the requirements of the letter of credit before making the advances make a bank free from liability. Merchants' Bank v. Griswold, 72 N. Y. 472, 28 Am. Rep. 159. A negotiating bank owes no duty of care, contract, or as trustee to the person who originally caused the issuance of the letter of credit. Kunglig Jarnvagsstyrelsen v. Nat. City Bank, 20 F.(2d) 307 (C. C. A. 2); Courteen Seed Co. v. Hong Kong & S. B. Corporation, 245 N. Y. 377, 157 N. E. 272, 56 A. L. R. 1186.

■ Moreover, at the time of the deposits—February 7 and March 25, 1929—there was but one letter of credit outstanding, No. 1030. It expired November 30, 1929, and not until that time could the appellant have known that Smith would not repay the advances made under it by shipments nor did it have any notice of the misappropriation of these advances. The letter of credit was ultimately fully repaid on November 9, 1929, by shipments of wool. Consequently, the appellants suffered no loss by reason of these transfers as they were repaid by shipments for all advances made under that letter of credit. The advances misappropriated by Smith were made under Red Clauses contained in later letters of credit—No. 1138 of April 23, 1929; No. 3156 of June 3, 1929. Assuming that appellant had notice that Smith was misappropriating Red Clause advances made under letter of credit No. 1030 which was not established, that alone would not have been sufficient to charge the appellant with bad faith in continuing to deal with Smith under later letters of credit which were entirely distinct contracts and as to which the appellant has not been shown to have had any notice of irregularities. Goetz v. Bank of Kansas City, 119 U. S. 551, 560, 7 S. Ct. 318, 30 L. Ed. 515; Lancaster County Nat. Bank v. Garber, 178 Pa. 91, 35 A. 848.

Judgment reversed.